**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
—————————————————————

RONALD MUKASA MAITEKI,

    Plaintiff - Appellant,

v.

MARTEN TRANSPORT LTD.,

    Defendant - Appellee,

and

VOYAGER EXPRESS, INC.,

    Defendant.

No. 15-1429

—————————————————————

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:12-CV-02021-WJM-CBS)**
—————————————————————

Submitted on the briefs:[*]

Andrew Nyombi, Emejuru & Nyombi, L.L.C., Silver Spring, Maryland, for Plaintiff-Appellant.

Stephen A. DiTullio and John C. Gardner, DeWitt Ross & Stevens, S.C., Madison, Wisconsin, for Defendant-Appellee.

—————————————————————

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Before **HARTZ**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

Ronald Maiteki appeals the district court's grant of summary judgment to his former employer, Marten Transport Ltd., on his claim that Marten violated the reinvestigation provision of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2(b)(1). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

Marten is a transportation company that employed Mr. Maiteki as an over-the-road truck driver from March to December 2011. Marten has a duty under federal regulations to conduct background checks on drivers. It therefore receives information from and provides information to HireRight, a consumer reporting agency (CRA) that publishes "Drive-A-Check" (DAC) reports on truck drivers' driving records. When describing Mr. Maiteki's work record to HireRight after his employment ended, Marten used code 938, which stands for "Unsatisfactory Safety Record," meaning that the driver did not meet the company's safety standards. Aplee. Supp. App. at 176.

Mr. Maiteki alleges that other companies declined to employ him after Marten's information appeared on his DAC report. He disputed the information, telling HireRight that "Unsatisfactory Safety Record" was incorrect because he "has no accidents/incidents listed on the report." Aplee. Supp. App. at 84. HireRight

asked Marten to send support for its statement and to check its records to determine if it had made an error.

Ann Konsela, an employee in Marten's human resources department, conducted the investigation. She reviewed the information sent by HireRight, Mr. Maiteki's personnel file, and the company's computer data, including information in its Human Resources Image Screen (HRIS) records.

Ms. Konsela saw that Mr. Maiteki's file contained a July 16, 2011 Driver/Vehicle Examination Report by the Illinois State Police stating that Mr. Maiteki had traveled between six and ten miles per hour over the speed limit; accompanying the report was a contemporaneous written police warning indicating he had been speeding. In addition, the file included a "Written Warning" from Marten placing Mr. Maiteki on a six-month probation for this incident.

In HRIS, Ms. Konsela also saw comments dated October 5, 2011, regarding data gathered on Mr. Maiteki's driving speeds. During the period it employed Mr. Maiteki, Marten contracted with a company called SpeedGauge to install speed-monitoring devices on Marten's trucks. HRIS showed that SpeedGauge had recorded Mr. Maiteki's truck traveling 12 miles per hour over the speed limit in Connecticut in October 2011 and had recorded him as having 13 incidents of driving at least four miles per hour over the speed limit in a seven-day period in September/October 2011. There was a notation that fleet manager Wendy Sobotta had issued Mr. Maiteki a "Serious Warning" based on this SpeedGauge data.

3

Ms. Konsela contacted Ms. Sobotta and confirmed that the October 5 HRIS entry was correct. Ms. Sobotta informed Ms. Konsela that she had seen the SpeedGauge records, told Mr. Maiteki that she was issuing him a Serious Warning, and entered the information into HRIS. At the time of Ms. Konsela's investigation, however, Marten no longer had access to the underlying SpeedGauge records.

Marten considers speeds more than four miles per hour over a posted speed limit to be an unsafe driving practice. In light of the Illinois incident and the SpeedGauge data, Ms. Konsela concluded that the information submitted to HireRight was correct. Marten therefore informed HireRight that "Work Record (938) Unsatisfactory Safety Record is accurate." Aplee. Supp. App. at 85. Although the response cited both the Written Warning for the Illinois incident and the Serious Warning based on the SpeedGauge data, Marten believed that the Illinois incident alone would support its report to HireRight.

Mr. Maiteki sued, alleging, among other claims, that Marten's reinvestigation was inadequate and the response was false, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1). Marten moved for summary judgment on the FCRA claim, which the district court granted. Mr. Maiteki appeals.[1]

## II. DISCUSSION

"We review a district court's decision to grant summary judgment de novo, applying the same standard as the district court." *Llewellyn v. Allstate Home Loans,*

---

[1] This appeal concerns only the FCRA claim against Marten. Mr. Maiteki has not appealed from the judgment on any other claims.

4

*Inc.*, 711 F.3d 1173, 1178 (10th Cir. 2013) (internal quotation marks omitted).

"Summary judgment is appropriate if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

Under § 1681s-2(b), when a CRA notifies an information furnisher of a dispute, the furnisher must take the following steps:

> (1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.

*Llewellyn*, 711 F.3d at 1178 (internal quotation marks omitted). "[T]he investigation an information furnisher undertakes must be a reasonable one." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012) (collecting cases).

A "reasonable" investigation "is one that a reasonably prudent person would undertake under the circumstances." *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014) (internal quotation marks omitted). "[H]ow thorough an investigation must be to be 'reasonable' turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute." *Boggio*, 696 F.3d at 617; *see Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010) ("[A] more limited investigation may be appropriate when CRAs provide the furnisher with vague or cursory information about a consumer's dispute."); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1160 (9th Cir. 2009) ("Congress could not have

intended to place a burden on furnishers continually to reinvestigate a particular transaction, without any new information or other reason to doubt the result of the earlier investigation . . . .").  "[T]he reasonableness of the investigation is to be determined by an objective standard," and "[t]he burden of showing the investigation was unreasonable is on the plaintiff."  *Chiang*, 595 F.3d at 37.

Mr. Maiteki first argues that summary judgment is improper because the reasonableness of an investigation is a question of fact that can be decided only by a factfinder.  He is wrong.  "Whether a defendant's investigation is reasonable is a factual question normally reserved for trial; however, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question."  *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).  Accordingly, circuit courts have affirmed summary judgments on § 1681s-2(b) claims in appropriate circumstances.  *See Chiang*, 595 F.3d at 38-39; *Gorman*, 584 F.3d at 1161; *Westra*, 409 F.3d at 827.

Mr. Maiteki next argues that there is sufficient evidence for a factfinder to conclude that Marten's investigation was unreasonable.  For support, he relies on the same 20 points he raised in the district court.  The district court ably explained why these points did not demonstrate a genuine issue of material fact as to the reasonableness of Marten's investigation.  Rather than discussing each point, we address only a few and reject the remaining arguments for substantially the reasons discussed by the district court.

6

Mr. Maiteki claims that Marten's investigation was perfunctory and "cabined." Aplt. Br. at 56. As stated above, however, the scope of a reasonable investigation turns on the information about the dispute that the furnisher has received. Mr. Maiteki's notice of dispute said simply that the use of Code 938, Unsatisfactory Safety Record, was "incorrect due to [Maiteki] has no accidents/incidents listed on the report." Aplee. Supp. App. at 84. Hence, it was not unreasonable for Marten to focus on whether there were incidents of record that supported its report to HireRight. Although Mr. Maiteki believes that Marten should have undertaken additional investigation and reviewed other sources of information (which purportedly would have more positively reflected his driving record), such additional investigation would not negate the Illinois warning and the SpeedGauge data that caused Ms. Konsela to conclude that Code 938 was accurate.

Mr. Maiteki asserts that he never received the Written Warning or the Serious Warning. But entries in HRIS are to the contrary; and given the terse nature of Mr. Maiteki's notice of dispute, Ms. Konsela had no reason to know that Mr. Maiteki was challenging those entries.

Mr. Maiteki also complains that Ms. Konsela failed to review the original SpeedGauge reports underlying Ms. Sobotta's October 5, 2011 HRIS entry and failed to contact either the Illinois State Police or SpeedGauge to verify the information in Marten's files. But as for the Illinois documents, there does not appear to be any reason to doubt their authenticity. Marten received them from the U.S. Department of Transportation. In district court Mr. Maiteki apparently did not dispute that

7

Marten's file contained these documents, and before this court he concedes that he was issued the warning, *see* Aplt. Br. at 56 ("Aside from the Illinois State Police warning of July 16, 2011, Maiteki never had any speeding tickets or incidents nor accidents while working for Marten."). Because she had no reason to question the documents, Ms. Konsela's failure to contact the Illinois State Police does not cast doubt on the reasonableness of the investigation. *See Gorman*, 584 F.3d at 1160 (information furnisher not required to perform additional procedures or inquiries when notice of dispute gave no reason to doubt the veracity of the initial investigation).

Regarding the SpeedGauge data, it is undisputed that Marten no longer had access to the SpeedGauge reports underlying the HRIS entry by the time of Ms. Konsela's investigation. Ms. Konsela would have had to contact SpeedGauge in an attempt to review that information.[2] But an investigation does not have to be exhaustive to be reasonable; an information furnisher may balance the costs and benefits of engaging in additional procedures. *See Seamans*, 744 F.3d at 865; *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432-33 (4th Cir. 2004). If the circumstances warrant, a company may rely on its own records. *See Gorman*, 584 F.3d at 1159-60; *Westra*, 409 F.3d at 827. We recognize that the Fourth Circuit has held that a jury could find unreasonable a procedure requiring agents to rely solely on computer data and "never consult underlying documents" for verification.

---

[2] Neither party submitted the underlying SpeedGauge records to the court. Thus, it is not clear which party such records might support or whether they even would be available.

*Johnson*, 357 F.3d at 431.  In this case, however, instead of relying on the bare HRIS data, Ms. Konsela followed up with Ms. Sobotta, who confirmed that she had reviewed the underlying SpeedGauge reports and that the HRIS information was accurate.  It was reasonable for Ms. Konsela to rely on Ms. Sobotta's confirmation.  Further, the record evidence shows that Marten believed Code 938 was appropriate even if the Illinois incident were the only incident.  In these circumstances, Ms. Konsela could properly decide not to reach out to SpeedGauge.

Mr. Maiteki raised certain additional arguments in his reply brief, but arguments not made in the opening brief are waived.  *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011).

In short, Mr. Maiteki has not carried his burden to show that a reasonable factfinder could conclude that Marten's reinvestigation was unreasonable.  The district court appropriately granted summary judgment to Marten on Mr. Maiteki's FCRA claim.

### III.  CONCLUSION

Marten's request that Mr. Maiteki pay fees and costs for filing a frivolous appeal, made in its response brief, is denied.  Fed. R. App. P. 38 requires such a request to be made in a separate filing.  The district court's judgment is affirmed.