FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARSHALL GROSS,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>CITIMORTGAGE, INC.,<br>*Defendant-Appellee*,<br><br>and<br><br>CITIBANK, NA; EQUIFAX<br>INFORMATION SERVICES LLC;<br>EXPERIAN INFORMATION SOLUTIONS,<br>INC.; TRANS UNION LLC,<br>*Defendants*. | No. 20-17160<br><br>D.C. No.<br>2:18-cv-02103-<br>ROS<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted November 17, 2021
San Francisco, California

Filed May 16, 2022

Before:  Sidney R. Thomas and M. Margaret McKeown,
Circuit Judges, and Donald W. Molloy,* District Judge.

Opinion by Judge McKeown

## SUMMARY**

### Fair Credit Reporting Act

The panel reversed the district court's summary judgment in favor of CitiMortgage, Inc., in Marshall Gross's action alleging that CitiMortgage violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681, *et seq.*, by failing to reasonably investigate Gross's dispute concerning a debt that CitiMortgage reported to national credit reporting agencies and by providing inaccurate information to those agencies.

CitiMortgage erroneously reported a junior mortgage as "past due," with accruing interest and late fees and a string of missed payments, even though Gross's liability on the debt had been "abolished" under the Arizona Anti-Deficiency Statute.

The panel held that Gross has more than satisfied his burden to make a prima facie showing of inaccurate reporting:  he established as a matter of law that

---

* The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

CitiMortgage's reports were "patently incorrect." The panel explained that the question is not, as the district court put it, whether the junior mortgage was entirely "extinguished" by Arizona law, or whether the debt continued to exist; the point is that, vis-à-vis Gross, no outstanding balance existed, because the statute abolished his personal liability.

The panel held that there is a genuine factual dispute about the reasonableness of CitiMortgage's investigation, and thus left it to the jury to determine the reasonableness.

Rejecting CitiMortgage's argument that even if liability is established, the district court should be affirmed on the ground that there are no damages, the panel wrote that the issue of causation is quintessentially one for the jury and not for this court to decide on appeal.

## COUNSEL

David A. Chami (argued), Price Law Group APC, Scottsdale, Arizona; for Plaintiff-Appellant.

K. Lee Marshall (argued), Bryan Cave Leighton Paisner LLP, San Francisco, California; Sean K. McElenney and Gregory B. Iannelli, Bryan Cave Leighton Paisner LLP, Phoenix, Arizona; for Defendant-Appellee.

Karen S. Bloom (argued), Senior Counsel; Steven Y. Bressler, Assistant General Counsel; John R. Coleman, Deputy General Counsel; Mary McLeod, General Counsel; Consumer Financial Protection Bureau, Washington, D.C.; for Amicus Curiae Consumer Financial Protection Bureau.

## OPINION

McKEOWN, Circuit Judge:

Our nation's credit reporting system relies on accurate reporting both by credit reporting agencies and by the entities that provide information to those agencies about consumers' debts ("furnishers"). When a consumer disputes an entry on his credit report, the furnisher must conduct a reasonable investigation—not merely rubberstamp information in the file. In this case, CitiMortgage, Inc. erroneously reported that Marshall Gross owed a debt that had been "abolished" under Arizona law. After Gross disputed the entry, CitiMortgage continued to report late payments on the debt and mounting interest and late fees. As a matter of law, the reports were false. Whether CitiMortgage's investigation was "reasonable" is a factual question that we leave to a jury. We reverse the district court's grant of summary judgment in favor of CitiMortgage.

### BACKGROUND

In January 2007, Marshall Gross bought a single-family home in Arizona, taking out two separate mortgages to finance the purchase. In an arrangement known as an "80-20 loan," the first ("senior") mortgage covered 80% of the home's purchase price ($161,896), and the second ("junior") mortgage covered the remaining 20% ($40,474). In 2012, Gross, experiencing financial difficulties, stopped making payments on both mortgages. After he defaulted, the senior lender began the foreclosure process. Gross eventually lost his home at a trustee sale in June 2013.

Like many properties during the national subprime mortgage crisis, Gross's home had lost significant value.

Although he bought the home for over $200,000 six years earlier, it sold for only $161,400, barely enough to satisfy the senior mortgage. The proceeds did not cover the junior mortgage, now owned by CitiMortgage. Because Arizona law precludes suit on a foreclosure deficiency, CitiMortgage, which bought the junior loan from a different bank in 2007, lost its investment entirely.

In 2017, Gross began shopping for a new home, but initially could not get approved for a mortgage. According to Gross, lenders denied his applications because CitiMortgage was still reporting the junior mortgage as "past due" on his credit report, with accruing interest and late fees, and with a string of missed monthly payments.

After unsuccessful attempts to resolve the matter over the phone, in February 2018, Gross submitted a written dispute through TransUnion, a national credit reporting agency. Using an automated platform, TransUnion sent CitiMortgage an "Automated Consumer Dispute Verification" with notes about Gross's dispute. That Verification specifically noted Gross's claim that he had lost his home in a foreclosure sale and no longer owed the junior mortgage. In his report to TransUnion, Gross included a citation to the Arizona Revised Statutes, pointing to the provision that abolished the debt. The Automated Consumer Dispute Verification conveyed this information, complete with the statutory citation.

On May 3, 2018, Gross again disputed the debt with Experian and TransUnion, writing, "I don't owe any money on this loan. The house was foreclosed on June 13, 2013."

This appeal primarily concerns what happened next. In response to the February dispute, after receiving notice from TransUnion, CitiMortgage reported a current balance of

$38,010 and a past due amount of over $50,000. CitiMortgage "updated" Gross's account to show that he was 180 days late, instead of 120 days late, on his monthly payments. The bank also added a note to the report stating the Gross had "disputed" the debt "under the Fair Credit Reporting Act."

In response to the May 2018 dispute, CitiMortgage changed the mortgage balance to zero as of May 2018 and marked the account as "paid, closed" with $38,010 "charged off" as of April and May of 2018. As it turns out, CitiMortgage had in fact "charged the debt off," meaning that the bank treated the debt as uncollectible and wrote it off on the bank's books.[1]

Discovery revealed how those notations came to be. At a deposition, CitiMortgage's Vice President and manager of research services testified that disputes like Gross's are routed to a third-party contractor that employs dispute agents based abroad. After Gross's first dispute, agents "verified" that there was an outstanding balance by consulting internal "transaction history," "case notes," and "system notes."

As relevant here, Gross sued CitiMortgage under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* Gross alleged that CitiMortgage and Citibank violated FCRA by failing to reasonably investigate his dispute and by providing inaccurate information to the three national credit reporting agencies. The court dismissed all parties except

---

[1] While it was potentially misleading for CitiMortgage to report a "charge off" several years after Gross's debt was abolished, Gross did not dispute the charge-off date in writing. *See Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1106 (9th Cir. 2012) (a furnisher's duty to correct false information is triggered once the furnisher receives information about a dispute from a credit reporting agency).

CitiMortgage, which is the only defendant in this appeal. Later, on cross-motions for summary judgment, the district court ruled for CitiMortgage, determining that its reports to the credit reporting agencies were accurate as a matter of law, and that CitiMortgage had reasonably investigated Gross's disputes. We review that decision de novo. *U.S. Sec. & Exch. Comm'n v. Hui Feng*, 935 F.3d 721, 728 (9th Cir. 2019).

## ANALYSIS

## I. LAWSUITS AGAINST "FURNISHERS" UNDER FCRA

Congress enacted FCRA to ensure accurate reporting about the "credit worthiness, credit standing, credit capacity, character, and general reputation of consumers." 15 U.S.C. § 1681(a)(2). Under FCRA, a consumer may request a copy of his credit report from TransUnion, Equifax, and Experian, the country's "Big Three" credit reporting agencies. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2201 (2021); 15 U.S.C. § 1681g(a). If the consumer finds something amiss on the credit report, one option is to file a dispute with the credit reporting agency, which in turn notifies the entities that "furnished" information about the consumer's debt. 15 U.S.C. § 1681i(a). CitiMortgage supplied information about Gross's debts to the national credit reporting agencies, making it a "furnisher" under FCRA and its implementing regulations. *Id.*; 12 C.F.R. § 1022.41(c) (defining "furnisher").

FCRA regulates how furnishers must respond to a notice of dispute from a credit reporting agency. Among other things, the furnisher must correct or delete inaccurate information after conducting an "investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b). That "investigation" must be at least "reasonable" and "non-

cursory." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009). A consumer may sue a furnisher and recover damages if the furnisher willfully or negligently violated FCRA. 15 U.S.C. §§ 1681n, 1681o; *see Syed v. M-I, LLC*, 853 F.3d 492, 503 (9th Cir. 2017).

In this respect, a furnisher's duties resemble those of a credit reporting agency, which can also be liable for failing to "follow reasonable procedures to assure maximum possible accuracy" of information on a credit report. 15 U.S.C. § 1681e(b); *see also* 15 U.S.C. §§ 1681n, 1681o. In such lawsuits, before a court considers the reasonableness of the agency's procedures, the consumer must make a "prima facie showing" of inaccuracy in the agency's reporting. *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010)). This order of proof makes sense: if there is no inaccuracy, then the reasonableness of the investigation is not in play. On the flip side, if there is an inaccuracy, to succeed, the plaintiff must establish that the investigation was unreasonable. We join those circuits that have extended this logic to FCRA lawsuits against furnishers. *See, e.g.*, *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018) (a FCRA plaintiff must "demonstrat[e] that *had* the furnisher conducted a reasonable investigation, . . . the furnisher would have discovered that the information it reported was inaccurate or incomplete. . . ."); *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 37 (1st Cir. 2010) (holding that, in suits against furnishers and agencies alike, a plaintiff must "demonstrate some causal relationship between the . . . allegedly unreasonable reinvestigation and the failure to discover inaccuracies in his account."). Just as in a lawsuit against a credit reporting agency, to prevail on a FCRA

claim against a furnisher, a consumer must make a prima facie showing that the furnisher's report was inaccurate.

## II. CITIMORTGAGE'S REPORTS WERE INACCURATE UNDER THE ARIZONA ANTI-DEFICIENCY STATUTE

The key to this case rests on the Arizona Anti-Deficiency Statute, which abolished Gross's liability for the debt that CitiMortgage reported. Enacted in 1971, this statute provides that after a trustee sale, if a mortgage deficiency remains, "no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness . . . ." Ariz. Rev. Stat. § 33-814(G). As a practical matter, the Anti-Deficiency Statute protects certain Arizona homeowners from the "financial disaster of losing their homes to foreclosure," and then being personally liable for outstanding mortgage deficiencies. *Baker v. Gardner*, 770 P.2d 766, 769 (Ariz. 1988).

The Arizona Supreme Court first analyzed the Anti-Deficiency Statute in *Baker v. Gardner*, where the court rejected a lender's attempt to sue homeowners who had defaulted on their mortgages. The court held that the lender could only recover from the proceeds of the trustee sale and could not sue the lenders personally. *Id.* at 769, 772. The court rejected the argument that the Anti-Deficiency Statute was merely a "procedural" device governing the lender's remedy in a lawsuit. *Id.* at 770. According to the court, the Anti-Deficiency Statute "abolish[ed] the personal liability" of qualified Arizona homeowners for mortgage deficiencies, not just the lender's procedural remedies. *Id.* at 772.

With Gross's liability "abolished," he was no longer obligated to repay the debt. *See Black's Law Dictionary* (11th ed. 2019) (defining "debt" as "[l]iability on a claim"); (defining "liable" as "[r]esponsible or answerable in law;

legally obligated"). Gross no longer owed a balance, so his payments were not late, and the loan should not have been accruing interest or late fees. It was "patently incorrect" for CitiMortgage to report otherwise. *Gorman*, 584 F.3d at 1163.

Although we recognize the difference between bankruptcy provisions and the Arizona Anti-Deficiency Statute, practically speaking, the situation was no different than a discharge under bankruptcy law, which extinguishes "the personal liability of the debtor." 11 U.S.C. § 524(a)(1). "[T]hat discharge means that the debt (even if unenforceable) will not remain on a credit report potentially affecting an individual's ability to borrow money, buy a home, and perhaps secure employment." *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1414 (2017); *see Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944–45 (11th Cir. 2021) (holding that, after the debt was discharged by bankruptcy, it was factually inaccurate to report a balance owed and that the borrower was past due on the debt).

The question is not, as the district court put it, whether the junior mortgage was entirely "extinguished" by Arizona law, or whether the debt continued to exist. The point is that, vis-à-vis Gross, no outstanding balance existed, because the statute abolished his personal liability. CitiMortgage did not merely report that Gross's debt existed; it reported late payments, accruing interest, and an outstanding balance. Those reports were inaccurate.

Gross has more than satisfied his burden to make a prima facie showing of inaccurate reporting: he established as a matter of law that CitiMortgage's reports were "patently incorrect." *See Gorman*, 584 F.3d at 1163 (defining inaccuracy under FCRA as information that is "patently incorrect" or materially misleading).

## III.   REASONABLENESS OF INVESTIGATION

Establishing an inaccuracy is not enough, however; Gross must also show that the inaccuracy was the product of an unreasonable investigation by CitiMortgage. Unless "only one conclusion about the conduct's reasonableness is possible," the question is normally inappropriate for resolution at the summary judgment stage. *Gorman*, 584 F.3d at 1157 (quoting *In re Software Toolworks Inc.*, 50 F.3d 615, 622 (9th Cir. 1994)). Here, as is ordinarily the case, this question is best left to the factfinder.

Although FCRA requires both agencies and furnishers to conduct "reasonable" investigations, a furnisher's investigatory obligations will often be more extensive and more thorough. Credit reporting agencies are third parties that "lack[] any direct relationship with the consumer," so they must rely on the representations of the furnishers who usually own the debt. *Gorman,* 584 F.3d at 1156–57; *see Carvalho*, 629 F.3d at 891 (agencies "simply collect and report information furnished by others."). Furnishers, on the other hand, "stand[] in a far better position to make a thorough investigation of a disputed debt. . ." *Gorman*, 584 F.3d at 1156. This means that FCRA will sometimes require furnishers to investigate, and even to highlight or resolve, questions of legal significance. As the Consumer Financial Protection Bureau emphasized in its amicus brief, FCRA does not categorically exempt legal issues from the investigations that furnishers must conduct. The distinction between "legal" and "factual" issues is ambiguous, potentially unworkable, and could invite furnishers to "evade their investigation obligation by construing the relevant dispute as a 'legal' one."

Federal regulations require furnishers to "establish and implement reasonable written policies" to ensure the

accuracy of their reports.   12 C.F.R. § 1022.42(a).   The reasonableness of a furnisher's policies depends on the "nature, size, complexity, and scope of each furnisher's activities."  *Id.*   Courts have also identified several factors that inform the reasonableness analysis, including: the furnisher's relationship to the debt and to the consumer; the level of detail in the credit reporting agency's notice of dispute; and the feasibility of implementing investigatory procedures, including training staff.   *See, e.g.*, *Gorman*, 584 F.3d at 1157; *Felts*, 893 F.3d at 1312; *Maiteki v. Marten Transport Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432 (4th Cir. 2004).

With these factors at play, there is a genuine factual dispute about the reasonableness of CitiMortgage's investigation.  We thus leave it to the jury to determine the reasonableness.

## IV.    ACTUAL DAMAGES

If Gross persuades the jury that CitiMortgage was negligent, the remaining question is whether he is entitled to "actual damages."   15 U.S.C. § 1681o(a).   Such damages could include recovery for the "emotional distress and humiliation" allegedly caused by CitiMortgage's reports and Gross's resulting financial difficulties.  *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). CitiMortgage argues that even if liability were established, the district court should be affirmed on the alternate ground that there are no damages.   That reasoning is based on CitiMortgage's claim that Gross's financial issues were caused by entries made by others on his credit report, and not by CitiMortgage.  This causation issue is quintessentially one for the jury and not for us to decide on appeal.  *See Lies*

*v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981) ("Causation is generally a question of fact for the jury . . .").[2]

**REVERSED AND REMANDED.**

---

[2] In the same vein, we reject CitiMortgage's argument that Gross did not allege "concrete harm" sufficient to satisfy Article III, although we emphasize that the extent of the harm is a question for the jury. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) (individuals whose allegedly misleading credit reports were distributed to third parties had standing to sue).