NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 23 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ERIC T. MITCHELL, an individual, on behalf of himself and all others similarly situated,<br><br>    Plaintiff-Appellant,<br><br> v.<br><br>SPECIALIZED LOAN SERVICING LLC, a Delaware limited liability company,<br><br>    Defendant-Appellee. | No. 22-55107<br><br>D.C. No.<br>2:20-cv-10455-SB-PD<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Stanley Blumenfeld, Jr., District Judge, Presiding

Argued and Submitted November 14, 2022
Pasadena, California

Before: WARDLAW and W. FLETCHER, Circuit Judges, and KORMAN,[**]
District Judge.

---

[*]  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]  The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

Eric T. Mitchell appeals from an order granting summary judgment to Specialized Loan Servicing, LLC ("SLS," the defendant-appellee), dismissing Mitchell's complaint arising out of SLS's alleged inaccurate credit reporting, and denying his motion for class certification as moot. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

On April 7, 2020, Mitchell sought forbearance relief from the servicers of his two residential loans, one of which was SLS. Through an automated interactive voice response ("IVR") telephone system, Mitchell "indicate[d] that he sought the forbearance agreement due to the negative economic impact of the Covid-19 pandemic." SLS approved the forbearance plan in early April 2020 and extended it for an additional three months in June 2020 at Mitchell's request.

During the forbearance plan, SLS reported Mitchell's account status as current with no reported date of first delinquency and no past due balance. On the same reporting form, however, SLS used the code "D" in Mitchell's payment history profile ("PHP"). The "D" code means no payment history, no data, or unknown. By contrast, a "0" code in the PHP field indicates "0 payments past due (current account)."

Mitchell argues that SLS's use of the "D" code rather than the "0" code in his PHP field during the period of forbearance violated the Fair Credit Reporting Act ("FCRA"). Specifically, Mitchell bases his principal argument on the March

2020 Coronavirus Aid, Relief, and Economic Security Act ("CARES") amendment to the FCRA. This amendment required furnishers to "report [a consumer's] credit obligation or account as current" if the furnisher agreed to provide forbearance or other relief on a consumer's loan. 15 U.S.C. § 1681s-2(a)(1)(F)(ii)(I). Mitchell also alleges violations of the California Consumer Credit Reporting Agencies Act ("CCRAA"), California's Unfair Competition Law ("UCL"), and a claim for breach of contract.

The district court granted summary judgment for SLS, dismissed Mitchell's claims, and denied Mitchell's motion for class certification. We review a grant of summary judgment de novo. *Pavoni v. Chrysler Grp., LLC*, 789 F.3d 1095, 1098 (9th Cir. 2015). "Viewing the evidence in the light most favorable to the nonmoving party . . . and drawing all reasonable inferences in its favor, we must determine whether the district court correctly applied the relevant substantive law and whether there are any genuine issues of material fact." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

1. The district court did not err in granting summary judgment for SLS on each of Mitchell's causes of action. The fact that SLS reported Mitchell's "account status" as "current account" shows that SLS complied with the FCRA requirement to "report [a consumer's] credit obligation or account as current." 15 U.S.C. § 1681s-2(a)(1)(F)(ii)(I). The use of "D" rather than "0" in the PHP field

3

does not change that conclusion. We agree with the district court that guidance from the Consumer Data Industry Association ("CDIA") supports the inference that using the "D" character "is an acceptable option" when reporting the account status as current. While a nonbinding Compliance Aid issued by the Consumer Financial Protection Bureau ("CFPB") says that a furnisher "should consider all of the trade line information they furnish that reflects a consumer's status as current or delinquent," it does not specifically mention the PHP. The CFPB guidance does not persuade us that reporting the PHP as "D" violates the FCRA's requirement to report the account as current. We therefore agree with the district court that SLS's "investigation and response to [Mitchell's] complaints of inaccuracies . . . were not unreasonable." Mitchell also cannot "make a prima facie showing that" SLS's reporting was inaccurate, as he must to state a FCRA claim. *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022).

While the district court did not reach several issues raised on summary judgment, even if we assumed some inaccuracy in SLS's reporting, the facts highlighted by Mitchell do not show that SLS acted willfully or negligently in conducting its investigation after receiving the notice of dispute. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009). Moreover, the language of this provision of the FCRA is "'less than pellucid'" and no appellate court has interpreted the language of the FCRA at issue here, so "[u]nder either the

4

negligence or willfulness standard . . . a defendant will nearly always avoid liability." *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673–74 (9th Cir. 2020) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007)). And even if SLS did act negligently, Mitchell has not provided admissible evidence of actual damages.

Mitchell's failed effort in August 2020 to finance the purchase of a Range Rover for $96,000, just a few months after requesting forbearance from SLS, does not evidence that he was damaged. Two banks declined to provide Mitchell with an auto loan for the purchase of the Range Rover. The record reflects, however, that the denials were for reasons unrelated to SLS's credit reporting or late mortgage payments. Instead, the denials appear to be related, at least in part, to Mitchell's prior bankruptcy, for which he filed in December 2013.

We also affirm the district court's holding that the CCRAA and UCL claims fail because SLS's reporting was accurate and complied with the FCRA. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (assuming that "California courts would interpret the FCRA and CCRAA consistently"); *Aleksick v. 7-Eleven, Inc.*, 140 Cal. Rptr. 3d 796, 801 (Ct. App. 2012) (holding that if "a statutory claim fails, a derivative UCL claim also fails"). As with the FCRA claim, even if Mitchell could show some inaccuracy in SLS's credit reporting, he has not provided admissible evidence of damages.

5

2.     The district court also did not err in dismissing Mitchell's breach of contract claim.  We agree with the district court that, under these circumstances, the forbearance plan was not an enforceable contract because it lacked consideration.  Mitchell's case is unlike *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533 (N.D. Cal. 2012) and *Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10-03892, 2011 WL 1134451 (N.D. Cal. Mar. 28, 2011), where "plaintiffs expended time and energy and made financial disclosures in furtherance of the agreement, which they would not have been required to do under the original contract." *Ansanelli,* 2011 WL 1134451, at \*4; *accord Sutcliffe*, 283 F.R.D. at 553.  Mitchell secured the forbearance plan by calling SLS and choosing options through its IVR system.  SLS did not request any additional information or documents before entering into the forbearance plan.  Mitchell's action does not amount to consideration because it did not confer a benefit or cause Mitchell to suffer prejudice; nor was there a bargained-for exchange.  *See Steiner v. Thexton*, 226 P.3d 359, 366 (Cal. 2010).  It was substantially less effort than the time and energy at issue in *Sutcliffe* and *Ansanelli*.  Once more, even if there were an enforceable contract here, SLS likely did not breach it because SLS appropriately reported the account.  Nor did Mitchell prove damages from SLS's conduct.

Nor did the district court err in declining to address the merits of Mitchell's promissory estoppel argument.  Mitchell did not separately allege a count for

6

promissory estoppel in his Amended Complaint. Mitchell only mentions promissory estoppel in one line of the joint summary judgment briefing and in his Reply in Support of Motion for Class Certification. We decline to address an issue that Mitchell failed to raise sufficiently for the trial court to rule on it. *Broad v. Sealaska Corp.*, 85 F.3d 422, 430 (9th Cir. 1996).[1]

3.      The district court did not err in denying Mitchell's class certification motion as moot because it properly dismissed all claims against SLS.

**AFFIRMED.**

---

[1] We assume, without deciding, that the contract claim is not preempted by the FCRA. *See Gorman,* 584 F.3d at 1167 ("In the end, we need not decide this issue. As we conclude below, even if Gorman could bring a state law libel claim under § 1681h(e), and such a claim were not preempted by § 1681t(b)(1)(F), he has not introduced sufficient evidence to survive summary judgment on this claim.").