In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 22-2570

TAMARA S. FRAZIER,

*Plaintiff-Appellant,*

*v.*

DOVENMUEHLE MORTGAGE, INC.,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-06721 — **Gary Feinerman**, *Judge.*

---

ARGUED APRIL 19, 2023 — DECIDED JULY 5, 2023

---

Before HAMILTON, BRENNAN, and KIRSCH, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Tamara Frazier sued credit data furnisher Dovenmuehle Mortgage, Inc. under 15 U.S.C. § 1681s-2(b) of the Fair Credit Reporting Act for allegedly providing inaccurate information after unreasonably investigating a dispute of its data. To prevail on this claim, Frazier must make a threshold showing that Dovenmuehle's data was incomplete or inaccurate. That requirement can be

satisfied by demonstrating the data furnished was (1) patently incorrect, or (2) materially misleading, including by omission.

Frazier contends that Dovenmuehle, upon notice of a data dispute, provided credit reporting agency Equifax with an inaccurate amended Pay Rate and Account History. For support she relies on evidence about persisting inaccuracies in Equifax's credit reports produced using the amended data. But given the full record, no reasonable jury could find that Dovenmuehle provided patently incorrect or materially misleading information. So, we affirm summary judgment for the data furnisher. We also affirm the district court's disposition of discovery and supplemental briefing motions for related reasons.

## I.

Dovenmuehle Mortgage, Inc., a mortgage subservicer, helps lenders administer mortgage loans by accepting and keeping track of payments. It also furnishes payment data to credit reporting agencies like Equifax, Experian, or TransUnion. These credit reporting agencies in turn compile and process that consumer credit information to produce a credit report for end-users, such as banks and landlords.

When a consumer notifies a credit reporting agency that information on a credit report is incorrect, the agency will identify the relevant data furnisher and transmit to it an Automated Consumer Dispute Verification (ACDV) form. The ACDV form presents the furnisher with account payment data the credit reporting agency currently possesses and the relevant data items the consumer disputes. Upon notice of a dispute, the data furnisher has a statutory duty to investigate the disputed data. The furnisher must also correct or verify

the information by returning the ACDV form to the credit reporting agency with any amended or verified data inserted next to the old data. *See generally* 15 U.S.C. § 1681s-2(b).

In 2007, Tamara Frazier obtained a home mortgage loan for which Dovenmuehle served as subservicer. Beginning in October 2015, Frazier failed to make her monthly payments, and by January 2016, she was 90 days delinquent. To resolve the delinquency, Frazier successfully negotiated and settled her debt through a short sale of her home, which closed on January 14, 2016.

Sometime in 2019 and 2020, Frazier realized this closed mortgage account was reported as delinquent on her credit reports, so she disputed the information to several credit reporting agencies, including Equifax. To confirm the accuracy of its records on Frazier's mortgage, Equifax sent Dovenmuehle four ACDV forms between 2019 and 2020. In its ACDV responses, Dovenmuehle amended or verified the following data items, among others. The contested items are in bold:

| DATA ITEM | CODING |
| --- | --- |
| Account Status | Changed from "80," meaning the account is 90–119 days past due, to "13," meaning the account is closed |
| **Pay Rate** | **Changed from empty to "3," meaning 90 days delinquent** |
| Balance | Verified as $0 |
| Amount Past Due | Changed from empty to "$0" |
| Date of Account Information | Changed from "11-26-2019" to "01-14-2016" (date of short sale) |
| Date Closed | Changed from "01-01-2016" to "01-14-2016" |
| Date of Last Payment | Changed from "09-01-2015" to "09-09-2015" |

| Date of First Delinquency | Changed from "10-01-2015" to "10-31-2015" |
|---|---|
| Special Comments Code | Verified as "AU," meaning paid in full for less than the remaining balance |
| **Account History** | **Changed from "3" (90 days delinquent) in December 2018 and January, June, August, and October 2019 to dashes "–" for all months after December 2015, meaning "no reporting"** |

Frazier contends the amended codes Dovenmuehle gave Equifax for Pay Rate and Account History are inaccurate. As evidence she points to how Equifax interpreted and reported the amended data in her credit reports. Equifax reported this amended data to indicate she was currently delinquent on the mortgage with missed payments in months following the settlement in January 2016.

In August 2020, Frazier applied for a new mortgage loan. But the mortgage broker denied approval because her Equifax credit report reflected late payments on her previous mortgage in months following the short sale.

Frazier sued Dovenmuehle and Equifax in separate federal suits, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq. See also Frazier v. Equifax Info. Servs., LLC*, No. 1:20-cv-06725 (N.D. Ill.). She claimed that Dovenmuehle violated § 1681s-2(b) by failing to conduct a reasonable investigation of disputed data and providing false and misleading information to credit reporting agencies. Shortly after the district court extended discovery deadlines, Dovenmuehle moved for summary judgment and to stay discovery. Frazier opposed Dovenmuehle's motions and asked under Federal Rule of Civil Procedure 56(d) to continue briefing on the summary judgment motion until further discovery

could be completed. Frazier requested leave to depose Dovenmuehle and Equifax. And, in order to prove damages, she requested leave to obtain further evidence from the mortgage broker who denied her loan application. Vacating the summary judgment briefing schedule, the district court granted Frazier leave to depose Dovenmuehle, precluded her from deposing Equifax, and stayed any further discovery.

After the summary judgment motion was briefed, Frazier moved to supplement her response with deposition testimony she obtained from Equifax in the parallel lawsuit. The district court granted Dovenmuehle summary judgment and denied Frazier's motion to supplement as moot. Frazier timely appealed the partial denial of discovery, the grant of summary judgment, and the denial of her motion to supplement briefing.

## II.

We first review the grant of summary judgment for Dovenmuehle because that resolution informs our disposition of Frazier's appeals regarding her other motions. Our review is de novo. *Markel Ins. Co. v. Rau*, 954 F.3d 1012, 1016 (7th Cir. 2020).

## A.

Frazier's claim against Dovenmuehle arises under 15 U.S.C. § 1681s-2(b).[1] That statute has many components. In

---

[1] The relevant portion of § 1681s-2(b) reads:

(b) Duties of furnishers of information upon notice of dispute

(1) In general

short, it requires a data furnisher to investigate and review disputed information forwarded by a credit reporting agency for completeness and accuracy, and then send verified or amended data back to the agency.

The federal circuit courts that have interpreted § 1681s-2(b) agree on two threshold requirements for a claim under the statute:

---

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

1. The plaintiff must make a prima facie showing that the data furnisher provided incomplete or inaccurate information.[2]

2. The plaintiff must also show that the incompleteness or inaccuracy was the product of an unreasonable investigation—that is, had the furnisher conducted a reasonable investigation, it would have discovered that the data it provided was incomplete or inaccurate.[3]

We agree with their interpretations and adopt these requirements.

The district court resolved this case on the plaintiff's failure to prove inaccuracy, so we focus our discussion there. This court has not set forth a standard for incompleteness or inaccuracy under § 1681s-2(b), to the frustration of district courts within our circuit.[4] We set that standard now and again

---

[2] *See, e.g., Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022); *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 629 (6th Cir. 2018); *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018); *Seamans v. Temple Univ.*, 744 F.3d 853, 864–66 (3d Cir. 2014); *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1185–86 (10th Cir. 2013); *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 29–30 (1st Cir. 2010); *Saunders v. Branch Banking and Tr. Co. of VA*, 526 F.3d 142, 148 (4th Cir. 2008).

[3] *See, e.g., Gross*, 33 F.4th at 1252; *Woods v. LVNV Funding, LLC*, 27 F.4th 544, 550 (7th Cir. 2022) (citing *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)); *Pittman*, 901 F.3d at 629; *Felts*, 893 F.3d at 1312; *Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016); *Simms-Parris v. Countrywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011); *Chiang*, 595 F.3d at 29–30; *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430–31 (4th Cir. 2004).

[4] *See, e.g., Lute v. TransUnion, LLC*, No. 18-CV-07451, 2022 WL 971877, at *4 (N.D. Ill. Mar. 31, 2022) (noting the Seventh Circuit has not addressed the issue but adopting out-of-circuit test for incompleteness or

follow the lead of our fellow circuits in holding that incompleteness or inaccuracy under § 1681s-2(b) requires a showing that the information the data furnisher provided was (1) patently incorrect, or (2) materially misleading, including by omission.[5] By materially misleading, we mean "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Gorman*, 584 F.3d at 1163 (quoting *Sepulvado*, 158 F.3d at 895); *see also Seamans*, 744 F.3d at 865; *Saunders*, 526 F.3d at 148.

Frazier maintains that completeness or accuracy under § 1681s-2(b) must be judged based, not on the ACDV response the data furnisher provided, but on the credit report generated from it. But the text of § 1681s-2(b) says nothing about a credit report, let alone a duty of a data furnisher with respect to credit reports produced using its amended data. To the contrary, the statute sets out the data furnisher's duties to investigate       disputes,      correct      incomplete      or       inaccurate

---

inaccuracy); *Levine v. JPMorgan Chase & Co.*, 46 F. Supp. 3d 871, 875 (E.D. Wis. 2014) (adopting out-of-circuit test); *Sutherland v. Urb. P'ship Bank*, No. 11 CV 03455, 2012 WL 567787, at *4 (N.D. Ill. Feb. 21, 2012) ("The Seventh Circuit has not picked a side or otherwise defined in detail the accuracy standard for claims under § 1681s–2(b).").

[5] *See, e.g.*, *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 943 (6th Cir. 2020) (citing *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012)); *Seamans*, 744 F.3d at 865; *Llewellyn*, 711 F.3d at 1186; *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)); *Saunders*, 526 F.3d at 148 (citing *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)); *see also Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998) (adopting the misleading standard for 15 U.S.C. § 1681e(b)); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 39–40 (D.C. Cir. 1984) (same).

information, and report the results of an investigation to the credit reporting agency. *See* § 1681s-2(b)(A)–(E). In fact, § 1681s-2(b)(E) clarifies that the duty to correct data applies "for purposes of reporting to a consumer reporting agency only." An accompanying regulation points the same way: "Accuracy" in § 1681s-2(b) concerns the "information that a furnisher provides to a consumer reporting agency about an account or other relationship." 12 C.F.R. § 1022.41(a).

It follows that completeness or accuracy under § 1681s-2(b) is determined based on the information the data furnisher provides to the credit reporting agency. Just as the reasonableness of a data furnisher's investigation is assessed objectively based on the content of the ACDV the furnisher received, *see Woods*, 27 F.4th at 550; *Maiteki*, 828 F.3d at 1275; *Chiang*, 595 F.3d at 29–30, completeness or accuracy is evaluated objectively based on the content of the furnisher's ACDV response. *Cf. Bibbs v. Trans Union LLC*, 43 F.4th 331, 342–44 (3d Cir. 2022) (applying a "reasonable reader standard" to hold that a credit report was not materially misleading under 15 U.S.C. § 1681e(b), a FCRA provision applicable to credit reporting agencies). So, whether Dovenmuehle's ACDV responses were patently incorrect or materially misleading must be evaluated objectively based on those responses.

**B.**

Having clarified the legal standard, we turn to the two alleged inaccuracies Frazier highlights in Dovenmuehle's ACDV responses.

First, Frazier takes issue with the dashes in the Account History section for all months after December 2015. She says the dashes are "a verification of the inaccurate … late

payments" reflected in the old data. But Frazier must be held to the admission in her Statement of Facts that the dashes meant "'no reporting' … for all months following the Short Sale." The mortgage was settled in January 2016, so it is accurate to show no reporting of payments for all months after December 2015. Given Frazier's admission, we do not address any alternative interpretation of the dashes by Equifax—whether as reflected in credit reports or deposition testimony. We take no position on whether such evidence would be relevant to whether the dashes are misleading.

Second, Frazier contends the Pay Rate of "3" (90 days delinquent) can only signify that her mortgage loan account was currently delinquent—which would be inaccurate—rather than historically delinquent as of the time the account was settled. At oral argument, her counsel also maintained the "3" was in the wrong place and that its correct location was in the Account History section. Oral Arg. at 07:00–08:10. It is not clear whether the "3" code is an incorrect indicator of current delinquency or a correct one of historical delinquency. So, the Pay Rate of "3" is not patently incorrect. The dispositive question thus is whether the code as presented on the ACDV form would materially mislead a reasonable observer to conclude that Frazier is currently delinquent.

Like the district court, we conclude that, when reviewed in context, the Pay Rate of "3" is not materially misleading. The "3" code is directly beside an Account Status code of "13," which means the account is closed. A few columns down, the Balance and Amount Past Due state $0. Date Closed is accurately marked as "01-14-2016," and so is the Date of Last Payment as "09-09-2015." Finally, the Special Comments Code was verified as "AU," which represents that Frazier's loan was

paid in full for less than the remaining balance. A debtor cannot be currently delinquent on a loan that no longer exists. With this full context, no reasonable jury could find that the "3" code meant Frazier was currently delinquent on her debt. *See generally Lash v. Sparta Cmty. Hosp. Dist.*, 38 F.4th 540, 542 (7th Cir. 2022) (citation omitted) ("A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). Accordingly, the Pay Rate of "3" is not materially misleading as a matter of law. And given the strength of this contextual evidence, any alternative interpretation of the "3" code by Equifax or Frazier's expert would fail to present a genuine issue of material fact on accuracy. We do not address whether Equifax's interpretation of the "3" code is relevant to whether it is materially misleading.[6]

This conclusion places our court in line with a case on which the district court relied, *Bibbs v. Trans Union LLC*, 43 F.4th 331 (3d Cir. 2022). Though that case involves the accuracy of a credit report under 15 U.S.C. § 1681e(b), given our adoption of the patently incorrect or materially misleading standard from § 1681e(b) caselaw, the analogy is tight. In *Bibbs*, the Third Circuit held that a "120 Days Past Due" Pay Status notation was not materially misleading as to whether the appellants' accounts were currently—rather than historically—past due in light of "multiple conspicuous statements reflecting that the accounts are closed and Appellants have no financial obligations to their previous creditors." 43 F.4th at 343–44. This was despite § 1681e(b)'s mandate for credit

---

[6] Other credit reporting agencies correctly reported Dovenmuehle's ACDV response data to show that Frazier was only historically delinquent, but we do not address the relevancy of this fact.

reporting agencies to assure "maximum possible accuracy." *Id.* at 344. No similar language exists in § 1681s-2(b), so context can play a large role in determining completeness or accuracy here.

**III.**

Turning to the district court's partial denial of discovery and its denial of Frazier's motion to supplement briefing, we review for abuse of discretion. *Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 568 (7th Cir. 2022); *Wanko v. Bd. of Trs. of Ind. Univ.*, 927 F.3d 966, 969 (7th Cir. 2019). In her Rule 56(d) discovery motion, Frazier sought to depose Equifax on "how to interpret the ACDV responses provided by DMI to Equifax." She also sought discovery from the mortgage broker to establish damages. She later moved to supplement her summary judgment response with Equifax's deposition testimony that she obtained in the parallel litigation against it.

Frazier made the tactical choice to sue Equifax separately, creating this procedural situation. But Frazier ultimately took Equifax's deposition, so her appeal of the denial of the motion to depose Equifax is moot. In any case, how Equifax interpreted Dovenmuehle's ACDV responses would not change the outcome of summary judgment, so any error in denying leave to depose Equifax or to offer supplemental briefing on Equifax's deposition testimony is harmless. And because we affirm summary judgment for Dovenmuehle, Frazier's appeal regarding the motion to obtain discovery from the mortgage broker is also moot.

AFFIRMED.