In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 23-2270

ANGELA FLOWERS,

*Plaintiff-Appellant,*

*v.*

KIA MOTORS FINANCE,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 21-cv-411-wmc — **William M. Conley**, *Judge.*

———————————

ARGUED FEBRUARY 16, 2024 — DECIDED JUNE 26, 2024

———————————

Before RIPPLE, BRENNAN, and JACKSON-AKIWUMI, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Early one morning, Angela Flowers saw a truck parked across the street from her apartment building in Lodi, Wisconsin. She and her son got into her car, a Kia Forte, to drive to work. The truck parked behind them, preventing them from backing out of their parking space. So, they drove through their backyard, onto the street, and later

the highway, the truck following close behind. Eventually, they lost the truck.

The next day Flowers contacted Kia Motors Finance ("Kia"), with whom she had a car loan. The company confirmed that she was behind on her payments and that her vehicle was subject to repossession. Kia had repossessed her car a year earlier, so Flowers suspected that the previous day's events were another repossession attempt.

Flowers sued Kia, alleging unlawful collection practices. But she unduly delayed her attempt to include the earlier repossession in her amended complaint. And she cannot point to any evidence from which a reasonable jury could find that Kia was involved in the events she describes. The district court granted Kia summary judgment, which we affirm.

## I. Background

### A. Factual

Summary judgment was granted to Kia, so we construe all facts and draw all reasonable inferences in a light most favorable to the non-movant, Flowers. *Biggs v. Chicago Bd. of Educ.*, 82 F.4th 554, 559 (7th Cir. 2023).

Flowers purchased a Kia Forte compact sedan in 2017. Kia financed a loan for her to buy the car. In 2019, Flowers fell behind on her loan payments. Kia gave her notice that she was in default and the Forte was repossessed in September 2019. Flowers paid the amounts she owed, and the next month regained possession of the car.

In the summer of 2020, Flowers again failed to make the scheduled loan payments, and Kia gave her notice that she was in default and that the vehicle may be repossessed.

Flowers spoke to a Kia representative and was told she would be sent some paperwork to try to resolve the default, but she alleged she never received it.

In November 2020, Flowers and her son would drive to work together early in the morning. One morning before 3:00 a.m. she went outside and noticed a truck parked across from her apartment building. She did not hear its engine running, nor could she recognize the make or model of the truck. She could see that its driver was a man wearing a beanie, but his clothing did not display any identifying information. The only other cars she saw in the parking lot that morning were her mother's and possibly a neighbor's. Flowers knew her neighbor's car had been paid off for some time.

That same morning at 3:30 a.m. Flowers and her son left their apartment, walked across the parking lot toward Flowers's vehicle, and saw the truck still parked across the street. As they walked toward the Forte, the truck drove backwards and stopped behind and perpendicular to Flowers's car. She estimated a four-to-five-foot gap between the rear of her car and the truck.

Before Flowers entered her car, she looked at the truck. She could not see any signs, numbering, lettering, or license plate. Neither she nor her son communicated with the driver, who remained in the truck.

Flowers and her son then got into her car. They sat for about a minute with the truck parked behind the Forte. This prevented her son, who was driving, from backing out of the parking space. So, he drove the car across the grassy backyard of the apartment building, through a small driveway, and onto a city street and eventually the highway. The truck

followed them through town, "right on [her] bumper," only a foot or 18 inches behind her car. Rather than Flowers directing her son to take them to work, she told him to "go, go, go."

The truck followed them onto the interstate. Instead of traveling their usual route south, Flowers's son drove north. The truck pursued them, staying "a bumper distance away" from their car. Flowers's son left the interstate, traveled through a truck stop parking lot, and then returned to the highway heading in the opposite direction. Only after traveling through the truck stop did Flowers and her son lose sight of the truck.

The next day, Flowers called Kia to ask if her car was subject to repossession. The representative initially said it was not, but later admitted it was. While Flowers had her loan with Kia, the company used repossession companies in Wisconsin, including in the area where she lived. The Forte was not repossessed in 2020 or thereafter.

## B.  Procedural

In June 2021, Flowers sued Kia alleging that blocking her car in and chasing her were an unlawful attempt to repossess the Forte. She claimed this violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and the Wisconsin Consumer Act, Wisconsin Statutes ch. 421 to ch. 427.

The district court held a pretrial conference and issued a scheduling order. The deadline to amend pleadings was set for July 29, 2022, after which "Federal Rule of Civil Procedure 15 applies, and the later a party seeks leave of the court to amend, the less likely it is that justice will require the amendment."

Four days before that deadline, the parties filed a stipulation about Flowers amending her complaint. The July 25, 2022 stipulation read: "Plaintiff shall have leave to amend the Complaint by and through the date seven (7) days after Plaintiff deposes [Kia Motor Finance]'s 30(b)(6) corporate representative, which the parties expect to complete in August 2022."

Due to scheduling conflicts, the deposition did not occur. Instead, Flowers's counsel suggested several potential dates, including August 30 and 31. Kia's counsel responded on July 28 that either date would work. Without filing an amended complaint, Flowers's counsel did not follow up with Kia about potential deposition dates until August 29. Then, on September 9, Flowers's counsel noticed the Kia corporate representative deposition for October 11.

On September 28, 2022, before that deposition, Kia moved for judgment on the pleadings. After Kia filed this motion, the district court accepted the parties' July 25, 2022 stipulation *nunc pro tunc*. Flowers then requested an extension of her deadline to respond to Kia's motion for judgment on the pleadings. She also said she intended to request leave to file an amended complaint.

The district court distributed a text only order to the parties on October 26, 2022, which read:

> Plaintiff's stated intent to seek leave to file an amended complaint that adds two new parties is a non sequitur. In any event, the deadline to amend without leave of court passed three months ago, and the court cautioned the parties in May, 2022 that the later they sought leave to

amend, the less likely it was that justice would require the amendment. R. [23] at 2. (To the extent the parties have stipulated to a future amendment, *see* R. [39], the court remains the gatekeeper whether to allow an amended complaint at this juncture regardless of the parties' stipulation).

Flowers received her requested extension to respond to Kia's motion for judgment on the pleadings. In her response, filed November 2, 2022, Flowers abandoned three of the four claims in her original complaint. She did preserve her claim that by the November 2020 events, Kia violated WIS. STAT. § 427.104, which governs unlawful debt collection practices.

The same day, Flowers moved for leave to file an amended complaint. In that proposed pleading, she sought to add allegations about the 2019 repossession. Emails between the parties' counsel later filed with the district court showed that by March 10, 2022, Flowers knew all the facts related to the 2019 default and repossession, the 2020 default, and those underlying any potential claims.

Kia opposed Flowers's motion to amend the complaint. Discovery closed, and on the deadline for dispositive motions, Kia moved for summary judgment on Flowers's remaining claim.

On June 1, 2023, the district court ruled on the pending motions. Kia's motion for judgment on the pleadings was granted as to three of the four counts in Flowers's original complaint. Her motion to amend her complaint was denied on grounds of undue delay and futility. The district court also granted Kia's summary judgment motion on Flowers's

remaining claim of unlawful debt collection under WIS. STAT. § 427.104, concluding that she had failed to present any evidence linking Kia to the unidentified truck and driver. The district court entered judgment in Kia's favor, and Flowers appeals.[1]

## II. Amendment of the Complaint

Flowers first contends that under the parties' July 25, 2022 stipulation, she did not need the district court's approval to file an amended complaint. Kia consented in writing to the amendment, Flowers argues, so the district court could not deny her motion. We "generally review denial of leave to amend for abuse of discretion." *O'Boyle v. Real Time Resols., Inc.*, 910 F.3d 338, 347 (7th Cir. 2018).

Undue delay was one ground on which the district court denied Flowers leave to file an amended complaint. She fails to address that ground on appeal, so she has waived any argument that the proposed amended complaint was filed without undue delay. *Bradley v. Vill. of Univ. Park, Illinois*, 59 F.4th 887, 897 (7th Cir. 2023) (appellant may waive issue or argument by failing to raise it in the party's appeal).

Even if we examine the merits of this argument, the district court was within its discretion to deny amendment of Flowers's original complaint. The parties' July 25, 2022 stipulation, which the court approved, did not trump that court's

---

[1] The district court had federal question subject matter jurisdiction under 28 U.S.C. § 1331, and supplementary jurisdiction over the Wisconsin state law claims pursuant to 28 U.S.C. § 1367. This appeal is taken from a final judgment of the district court, so this court has appellate jurisdiction under 28 U.S.C. § 1291.

scheduling order. That stipulation memorializes the under-standing that after the Kia corporate representative deposi-tion occurred, Flowers may need to amend her complaint. That agreement was based on a contingent event that did not take place. Stipulation or not, the district court always re-tained its authority to control the litigation, including the pleadings, as it reminded the parties on October 26, 2022.

Flowers's motion was filed after the scheduling order deadline, so the district court could have applied the "good cause" standard of Federal Rule of Civil Procedure 16(b)(4). *See Allen v. Brown Advisory, LLC*, 41 F.4th 843, 852–53 (7th Cir. 2022). Instead, the court applied the more lenient standard of Federal Rule of Civil Procedure 15(a)(2): "[t]he court should freely give leave [to amend] when justice so requires." As that rule states, amendment is generally favored. *See Foman v. Da-vis*, 371 U.S. 178, 182 (1962). Nevertheless, a district court may deny leave to amend when it has "good reason" for doing so, one example of which is undue delay. *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1133 (7th Cir. 2022); *Liebhart v. SPX Corp.*, 917 F.3d 952, 964 (7th Cir. 2019).

The district court properly found that Flowers "proposed an amendment seeking to add a new claim regarding an en-tirely different incident than was the focus of her original complaint." She "suggest[ed] without explanation that she could not have pleaded the new claim until she had deposed Kia's representative." But Flowers "conced[ed] that she was already aware of the facts and legal basis for her new claim, and even had the evidence in her possession by at least March 10, 2022." She never explained why she proposed her amended complaint eight months after having all the neces-sary information about the 2019 repossession. Without a

sound excuse for the undue delay, the district court did not abuse its discretion when it denied Flowers leave to amend her complaint. Given this evaluation, we need not address whether Flowers's motion to amend her complaint was futile.

### III.  Summary Judgment

We review the district court's grant of summary judgment to Kia de novo. *Pierner-Lytge v. Hobbs*, 60 F.4th 1039, 1043 (7th Cir. 2023). Summary judgment is appropriate if "there is no genuine dispute of material fact" and the moving party "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In applying this standard, we read the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Pierner-Lytge*, 60 F.4th at 1043.

Flowers alleges that Kia violated two provisions of WIS. STAT. § 427.104. Subsection (1)(a) provides that a debt collector may not "[u]se or threaten force or violence to cause physical harm to the customer or the customer's dependents or property." And Subsection (1)(h) prohibits a debt collector from "[e]ngag[ing] in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer."

Flowers contends that circumstantial evidence would permit a reasonable jury to find that Kia was legally responsible for the unidentified truck driver's actions in November 2020. Viewing the facts in favor of Flowers, a truck blocked in her vehicle within the parking lot adjacent to her home, and the only other parked cars were not susceptible to repossession. The truck then chased the Forte sedan for miles, at highway speeds and close range. The next day, Flowers confirmed with Kia that her car was subject to repossession. Discovery

yielded that in November 2020 Kia worked with a repossession company in her area of Wisconsin. Moreover, Kia previously had her Forte repossessed in 2019 by a company Kia had hired.[2]

There is no way, according to Flowers, that the events on November 2020 could be entirely coincidental. Any other explanation for the truck's actions pales next to the conclusion that Kia tried to repossess her car. To Flowers, only a jury could resolve this question.

Flowers incorrectly asserts that the type of evidence she points to—circumstantial—indicates whether a genuine issue of material facts exists on her claim. As this court has noted in its pattern civil jury instructions, "[t]he law makes no distinction between the weight to be given to either direct or circumstantial evidence." FEDERAL CIVIL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT, 1.12 (2017 rev.). Either type of evidence can prove a fact. *See, e.g., United States v. Godinez*, 7 F.4th 628, 639 (7th Cir. 2021) (collecting cases providing that circumstantial evidence is not weaker than direct evidence). The type of evidence Flowers relies on to support her claim does not dictate whether a genuine issue of material fact exists requiring a jury trial.

This court has recognized "that circumstantial evidence may be enough to survive summary judgment if that evidence could allow a jury to draw a reasonable inference in support of the non-moving party." *Jones v. Van Lanen*, 27 F.4th

---

[2] Flowers submitted this evidence about the 2019 repossession in her additional proposed findings of fact in March 2023, Dist. Ct. DE 63, nos. 2–4, unrelated to her previous motion to amend her complaint to include the 2019 repossession.

1280, 1286–87 (7th Cir. 2022). But an inference that "veers too far into speculation [fails] to survive summary judgment." *Id*. at 1286. Flowers offers only speculation in support of her remaining claim.

There is no dispute that Flowers cannot identify the truck involved in the events that early morning in November 2020, other than to say it was "dark blue or black." She could not see any markings on the truck. And she "did not know why the unidentified truck was in the parking lot or what actually was going on."

Flowers could not describe the truck's driver, other than to say he was a "male wearing a beanie." She did not identify any markings on the driver's clothing that might indicate who he was or for whom he may have been working. She had no contact or communication, directly or indirectly, with the truck driver.

She has not advanced evidence about who owned the truck; who the driver worked for; whether the driver was acting under the instructions of any other individual or company; what those potential instructions may have been; why the truck was at Flowers's apartment; why the driver followed Flowers and her son; and ultimately, if Kia or any company with which it contracted was involved in any of the events underlying her claim.

There is no evidence that Kia intended to use or threaten, or in fact used or threatened, force or violence directed at her to cause physical harm to her or her property in violation of WIS. STAT. § 427.104(1)(a). Flowers has no evidence of physical damage to herself or her property, and she did not identify any experts who may opine on that topic.

Just so, Flowers cannot demonstrate that Kia engaged in any conduct which could be reasonably expected to threaten or harass a customer, or a person related to a customer, in violation of WIS. STAT. § 427.104(1)(h). There is no question that Flowers and her son were harassed that morning. But she has not shown that the unidentified truck and its driver who did the harassing was connected to Kia in any way.

Simply put, there is no evidence from which a reasonable jury could find that Kia was involved in the November 2020 events, let alone that Kia violated Flowers's rights. As the district court correctly ruled, "speculation [] is insufficient to defeat a summary judgment motion."

Flowers's theory of liability is that her car was susceptible to repossession, her Forte was previously repossessed by a company hired by Kia, so that company (or another Kia contracted with) must be connected to the events in November 2020. But that theory is conjecture. Which company (if any) hired the truck and driver? At whose direction was the driver acting? And for what reason? Speculation cannot create a genuine issue of fact that defeats summary judgment. *Circle City Broad. I, LLC v. AT&T Servs., Inc.*, 99 F.4th 378, 384 (7th Cir. 2024) (citing *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016)). And speculation is insufficient to defeat a summary judgment motion. *See Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (nonmovant "is entitled … to all reasonable inferences in her favor, 'inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.'") (citing *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008)). Put directly, there must be some evidence connecting Kia to the actions of the unidentified truck and driver. There is none.

Flowers offers inferential leaps: Who else would it be? Why else would he be there? But courts deal in proof, and the leaps Flowers offers cannot be used to defeat summary judgment. Making all reasonable inferences for Flowers, no evidence connects a repossession company hired by Kia with the unidentified truck and driver. No evidence connects Kia to the November 2020 events—circumstantial or otherwise.

To Flowers, Kia suggests that the only way she could prove her case is by direct admission—from Kia, or a repossession company with which Kia contracts—that they directed or authorized the truck driver to chase Flowers. But that is not correct. Evidence on any of the topics or questions identified above could create a genuine issue of material fact. But no such evidence has been produced.

Flowers submits that Kia itself provided that evidence in its initial disclosures under Federal Rule of Civil Procedure 26. She points to those disclosures as information linking Kia to the events about which she complains. Specifically, Kia disclosed that it "dealt with" a national repossession management company, Primeritus Financial Services, on the account for Flowers's vehicle. Kia stated Primeritus subcontracted with towing companies like Statewide Recovery Specialists, including for the incident "forming the basis of [Flowers's] claims." To Flowers, Kia's identification of this discoverable information constituted a judicial admission to its involvement in the November 2020 incident, and that Kia's disclosure that entities may have or should have certain information is evidence sufficient to defeat summary judgment.

But Rule 26 initial disclosures do not play the role that Flowers contends. Judicial admissions are "formal concessions in the pleadings, or stipulations by a party or its counsel,

that are binding upon the party making them." *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir.1995). And initial disclosures fail to meet any of those criteria. Flowers does not cite any statute, rule, or precedent that states otherwise.

Initial disclosures are neither pleadings to the court nor sworn statements of parties. Rather, they provide information early in the proceedings to allow the parties to pursue discovery, collect evidence, and take necessary depositions. They relay the identity "of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses … ." FED. R. CIV. P. 26(a)(1)(A)(i). As the district court correctly explained, "[t]he purpose of the disclosures is to allow the parties to begin collecting evidence and engaging in discovery; they do not excuse a party from confirming information in the disclosures or from translating the disclosures into admissible evidence."

Thus, although Kia's disclosures contained information attempting to link Kia and the truck driver, Flowers did not develop that information into evidence a court could weigh at summary judgment. So, Kia's initial disclosures do not defeat its motion for summary judgment on Flowers's claims.

Flowers's final argument is that the truck driver was acting as Kia's agent when it harassed and scared her. But, again, she has not developed evidence to suggest that a Kia agent, such as a repossession company with which Kia contracted, was involved in any way on the events in November 2020. At summary judgment there is no evidence that Kia gave approval or permission for, or had control over, any attempted repossession. Without evidence as to what company the truck

driver may have worked for, there is no evidence that he was acting as an agent of Kia. So, this theory fails.

## IV. Conclusion

For these reasons, we AFFIRM the district court's decisions.